Thank you. All right, we're going to go on to our next case, and that is 21-2792 Yvonne Mack v. Resurgent Capital Services. Mr. Phillips. There you are. Hello. Good morning, Judge Rovner. How are you? We're all good. Thank you for asking. Thank you. You were also one of the first district judges I've ever appeared in front of in a settlement conference. I was just a mere associate on the end of 20 senior lawyers. You gave the same speech you gave this morning, which was, all right, everyone be nice. Here are some cookies. Let's work this out. We don't have the cookies today, but we all should be nice. Did you forget the coffee and the tea on Saturday? There was chicken soup, but okay, never mind. I was 15th person there, so I just stayed out of the way, Judge. We better start his clock over, because he was saying, I think, nice things. Not sure, but I think they were. Okay. May it please the court, counsel? I represent Ms. Yvonne Mack. I think historical context is important here. This case was filed in 2018. The goalpost started moving. So is this pled like we pleaded now for standing? No. No one knew there was an issue on standing here. What we pled was state of the art then, which was the statute required X. You told the consumer Y. That's a concrete injury because you told him something that's not true. So in this case, the defendant didn't think there was an issue on standing as to Ms. Mack. They didn't raise it in their answer to the complaint. They only raised arbitration and a bona fide error defense. They promptly pursued the arbitration issue saying that this dispute had to go to arbitration because of an agreement with the underlying creditor. They gave up on that eventually because they couldn't prove up the agreement. The first time they mentioned anything about standing was during class certification, but not as to Ms. Mack. They raised it as the absent class member saying we'd have to have individualized inquiries as to what do these people get, you know, when they got the second collection letter, what they think. And I would concede that right now the classes we had defined would fail. People who got the second letter and did nothing, just threw it out under this court's jurisprudence, they don't have a claim. But Ms. Mack certainly has a claim. So does anybody else who did exactly what the defendants wrongly told them they had to do, which was go and dispute the debt again. Okay? I'm going to stop you for a second because did Ms. Mack seek to be repaid for the postage and was it enough for her to claim statutory damages? And did she need to do anything more than ask for statutory damages? No, I don't think so, Judge. Not when it's a minor amount here. That's what statutory damages are for. Statutory damages are to cover when the actual damages are such a small amount that the $1,000 you could get under the statute for statutory damages, take care of that. Take care of the, you know, minor inconvenience or what people would call a minor inconvenience. But here it's not a minor inconvenience. Ms. Mack didn't sit there at her computer and rock it out a letter and put it in the mail. Ms. Mack's a low-income person, doesn't have a computer. She had to get on the bus. Okay? Which was less dangerous then than it might be now. But it's doing something serious. It's not just pushing a button. No, we know all about it. We know. We know she had to go to the library. We know. We know that. And then had to go to the post office and then had to take $3.15 out of her pocket. Now, maybe to us, sitting around here, we all have $3.15 that probably wouldn't hurt us. But what is that to Ms. Mack? Okay? It's a gallon of milk at Walmart. It's three loaves of white bread. It's a dozen eggs. That's damages. Now, we all would agree that Ms. Mack, in response to this second demand, said, I give up. Here's $300. Okay? Or if Ms. Mack, like some of the other consumers had something happen to her, like in Ewing where the credit score was impacted by a false claim or improperly reporting that debt wasn't disputed. We'd also agree that if Ms. Mack had a debt collector show up and beat her about the head, neck, and shoulders, but didn't get any money from her, that would be damages. You know, a lot of the case law that's come out, Pierre Midland, they said, oh, so long as the consumer didn't pay anything to the debt collector. Well, that's not true. There's all kinds of other ways you can be damaged by a collector's actions. Here, Ms. Mack did exactly what the debt collector wrongly told her to do. Now, on remand, the class members, we'd have to get the account history to see how many of the 600 people actually redisputed the debt. Those people all would have standing. Is it 60 of them? Is it 40 of them? Is it 100 of them? We don't know because we didn't get that discovery, even though we asked for it, because at the time, the district court, with the insurance of defendants, said we don't need that kind of information. We had to fight just to get the class members' names and addresses, to get class notice out. The motion for standing was filed just after the class was finally going to give notice. You know, we had a two-year hiatus here with COVID and other issues, but Ms. Mack suffered. She lost $3.15 and all that time. Hypothetically speaking, if Ms. Mack had hired a lawyer once she got this letter and gave the lawyer whatever the lawyer would charge, let's be optimistic, let's say $150, because she wanted to know if she had to do anything with this letter. Would you consider that to be injury in fact? I would, but the court wouldn't because of Brunette v. Outsourcing. The court said, oh, people have to consult with lawyers all the time. Now, I disagree with that because if Ms. Mack had hired a lawyer in response to the initial letter, okay, that's on her. If Ms. Mack spent, I don't know why it was $10, but her first dispute, she paid $10.15. Thank God she was saving money. She saved the defendant money. She saved him $7 on the second one because it was only $3 this time. But in response to what the defendant told her she had to do now, yeah, I think that would be covered. In fact, there was a recent 11th Circuit case, which is a circuit even more conservative on standing than this circuit, where they recognized just that sort of thing. We'll do a letter to the court. It's a case called Toast, or Toasty, T-O-S-T-E v. Beach Club at Fountain Blue, where Judge Pryor and a couple other judges recognized that kind of damage would equal standing, where because of something that someone wrongfully told them was going to happen, they had to consult with an attorney. And the court there used some interesting phraseology. It was just a mere, I called up Judge Lee when he was at his big firm and said this and that, and I didn't actually pay you any money, but you gave me a quick answer when you're done. That's not actionable. You have me come in, and you consult with me, and we have to research things and do things. That's actionable. And that's essentially what she had to do here. She had to go, I mean, you see this dispute. It's an Internet dispute. She's asking for all kinds of things, but that's because she had to go do this herself and look on the Internet. The defendants invaded her right to be left alone, which is a common-law injury. Under 1692 G.B., if I dispute the debt, the debt collector has to do a couple things. Provide me validation of the debt, which could have been as simple as them saying, We looked into it. Yes, you owe it. Frequently, a debt buyer like L.V. Envy would go, here's your last billing statement to show you what the amount of debt is, because that was her dispute. She thought the amount was too high. Or they can go away, cease collection, but they didn't. So when you dispute the debt, you, in fact, are cloaking yourself in another right to be left alone. So that's another common-law root here that they violated. The other common-law root here is you have a right not to be lied to. I didn't need to know that in common law. My mom told me that. My grandmother taught me that. You don't lie about something. Now, whether they intentionally did this or it was just some stupid mistake, corporate mistake, don't know. But they told her to do something, and she did exactly what they told her to do and had to pay money. So the issue here is it's the same type of injury, paying money. Maybe it's not a ton of money. It's a ton of money to a low-income consumer for sure. She shouldn't have to get on the bus. She shouldn't have to go to the library. And it's not like at the library you just pop on the computer. If you've ever been in the public libraries, you're probably going to wait. And then you're going to gin up your dispute. Let me ask you, you know, the other side says you're raising a new argument on appeal with this intrusion upon seclusion. The cases you cite in footnote 2 of your brief talk about the general rule that you can't raise new issues on appeal, except there's this exception for jurisdictional questions. How is, in your theory, raising a new injury a new jurisdictional ground or a new jurisdictional question? Well, I don't think we're raising something new. I think we're pointing out the facts. The complaint alleged that what the defendant did would cause a consumer to believe their dispute failed and that they had to re-dispute the debt. We're just showing, yes, she re-disputed the debt. In fact, it was a document the defendants had. Okay? This isn't something we surprised on them. They produced it to us. Mrs. Mack, for some reason, didn't keep a copy of that dispute or give it to us. If you look at our opposition to their motion on standing, what we attach, it says RCS 9 or something like that. That's their bait stamp for discovering that they produced to us. It shows the $3.15. It shows the dispute. And she testified to that, too, in her deposition. She was confused by this. So are you saying you raised intrusion upon seclusion below? You just didn't call it that? That's right. Okay. That's right. We didn't know to, you know. That's why I said two and a half years ago, or actually four years ago, when this case was filed, we didn't put in all those bells and whistles. No one knew it needed to be in there. Okay? The goalpost moved. In fact, the goalpost didn't just move. Okay? We were playing football at the goalpost, and they tore, you know, right or wrong from the consumer side. The goalpost didn't just move. They took them down and put up soccer nets. Okay? To be criticized after the fact that we're trying to kick an oblong ball instead of a round ball, it's really disingenuous, especially when they know she was damaged. They know she paid that money. They know she redisputed the debt, and they prevented us from getting the information from the class members to show is there a class or not. There might not be a class on remand. We don't know. Unless you have any further questions. No. You say we're going to give you your two minutes. I'm sorry, Judge. I didn't hear you. We're going to give you two minutes for rebuttal. Thank you, Judge. Thank you. Thank you. Ms. Olson, where are you? There she is. Hi. Good morning, Your Honors. Well, yeah. May it please the court. This court should affirm the district court's dismissal for two principal reasons. First, sending a second dispute preserving a consumer's rights is not a detrimental action under the FDCPA. Second, finding a- I'd like to stop you there. Can you keep your second in your mind? Because I'm troubled by the argument that the second letter didn't constitute an attempt to collect the debt. It's virtually identical to the first letter, which I would assume everyone agrees was an attempt to collect the debt. It announces amount due. It invites a call to customer service. It says it's from a debt collector. It says it's an attempt to collect the debt. Are you really contending that a consumer wouldn't reasonably interpret that as an attempt to collect a debt? As to the second letter, yes, I do argue that that was not an attempt to collect the debt. There was no request for a payment, and I know that that's not dispositive in and of itself. But even plaintiff or appellant testified in her deposition that she understood the first line of the second letter to mean that resurgent was looking into her inquiry, into her dispute. And so having testified that she understood that, even her, who she qualifies herself as the least sophisticated consumer, even she understood that that's what the letter was meaning. So, yes, I don't believe that the second letter was an attempt to collect the debt. And although the mini Miranda disclaimer at the bottom was there, this court has held that such disclosures do not necessarily indicate that the FDCPA is at issue, or that that is an attempt to collect the debt, because debt collectors are usually just being conservative, attempting to make sure that they're complying with the law, just in case your honors were to disagree with our argument that that is not an attempt to collect a debt. But it certainly reads as a new attempt to collect a debt. It even appears to come from a different debt collector. To me, it's sort of like it has every hallmark of an attempt to collect a debt. Maybe I don't know. Anyway, why don't you go to your second issue? All right. The second issue is that finding that a concrete injury is established under the FDCPA simply by mailing a letter would create absurd results. Well, I mean, she paid postage to mail the letter, right? She did pay postage to mail the letter. But I don't believe that the cost in and of itself is dispositive. I think we need to look at why was that cost incurred. Well, with regard to the cost, whether or not the cost was reasonable or not, that's an issue of damages. That's not an issue of injury. Why isn't the fact that she, the letter and the statements in the letter prompted her to go and pay $3 for postage to send a letter? To me, that seems like the quintessential injury, in fact. I understand how one could see it that way. I argue that it shouldn't be considered that way because this court has repeatedly held that confusion in and of itself does not establish standing. So if we look at why she paid that cost, she paid that cost because she was confused, not necessarily because that letter told her that she needed to do it. As I stated, in her deposition, she did testify that she understood the first line of the letter to mean that they were looking into her dispute. But the letter said that unless you respond to this letter within a certain amount of time, that the debt will be assumed to be valid, right? It does, which is unfortunate. That's what led us here to begin with. But this was a letter sent by a second debt collector. And under the law, again, we're told that if it is an attempt to collect the debt and that is their first attempt, which I argue that it is not, but it's a matter of conservative policy here, they included that disclosure because the law says they have to. Can a debt collector cause a debtor to incur the cost of asserting the right to validation before she can claim standing? In other words, can they send her 10 letters telling her they will assume the debt is valid unless she requests validation? What about, you know, like 10 letters from 10 different debt collection companies, even though she requested validation from the first one? And I apologize, Your Honor, you cut in and out for me. But if I understood your question correctly, I think that you were saying, can they just keep sending these letters instead of actually providing validation? Is that accurate? Pretty much so, yes. Okay. So I don't think that's a great policy to begin with, is to just keep sending letters and say, we're looking into this, we're looking into this. This was one letter, though. This wasn't multiple attempts. It is my understanding, and the record would show, that this servicer needed additional time to look into this dispute and gain the validation documents that they needed to respond to this dispute. And it was their policy at the time that they sent a letter basically advising the consumer that they're looking into this and that they need more time. Here's my problem. How can a second letter ever be beneficial to someone who's already requested validation? She didn't miss any deadlines to assert her right to validation. Why would this person need this extra opportunity, as it was called, to assert a right that she's already asserted? And all this did was, yes, cause her worry, inconvenience, and a concrete monetary loss. And as it happens, she is someone who is in the most vulnerable category of debtors. So, Your Honor, I understand that sending another letter wasn't necessary, perhaps. And that this consumer might not necessarily have needed an update saying, we're looking into this inquiry. However, at the time, this was a policy that was in place for a while. This letter had been sent out to many consumers. And this is the first instance where a consumer sued and said, you know, I was confused by this, and I disputed again, and I was injured. So, while this case might have changed the company's policy, now knowing how this one consumer reacted to the letter, at the time, unfortunately, it wasn't something that the servicer was even considering, because they thought they were just being, I guess, dutiful here in giving the consumer an update about their dispute. So they didn't believe that this had just gone by the wayside and they'd forgotten about it. Counsel, if I could get back to your theory that we should look at the source or the reasons why she incurred the $3 postage, and that that should control our analysis. Let's say that because of the letter, she was confused. And so what she did was, rather than sending another request for validation, what she did was she sent payment of her debt. Do you think in that scenario that she would have suffered concrete injury, in fact? I would argue no, because if she owed the debt, which there was proof that she did owe this debt, I don't believe that is a concrete injury to a consumer to pay the debt that is owed. However, under the case law, unfortunately, I think the Seventh Circuit has said that if the confusion leads to a detriment, such as paying an amount, but I will, I guess, qualify that. I believe the court has said paying an amount that is not owed or more than an amount is owed. Or, for instance, if you paid on something that wasn't accruing interest instead of paying on something that was accruing interest, because that could be a detriment because there's a loss of funds there. So I would argue that that isn't an injury because if she owed the debt, how is she any worse off? How is it an injury to pay one's debts? I think that would be a bad policy to rule that that's a concrete injury. But if we try to figure out whether or not a plaintiff has suffered injury, in fact, we look through the plaintiff's eyes, right? And so what does it matter whether or not the $3 she incurred was sent to the post office versus sent to the accreditor, right? So isn't the fact that she's out of this money enough concrete injury? I think, again, that according to the court's precedent, we have to look why did she make that payment. And she made this payment because she was confused. But making that second letter or sending that second letter and incurring this expense was not to her detriment. It will never be to a consumer's detriment to assert their rights, even if they do it a second time, in my mind. Well, it was to her detriment because now she's out $3, right? I understand. And I guess we're kind of in a circular argument here because I believe that you can't just look at it in isolation, whereas I see that not everybody necessarily agrees with that. But I think the problem we have here is, and this goes to my second point, is that the kind of results that we would have if we decide that consumers who acted in their best interest, seeing a letter, seeing that dispute notification again, and doing what's best for them and sending that second letter, we're going to say, oh, no, now the courts are open to you. You're an injured party, even though you did something in your best interest. And I think that's where the problem lies. We're going to see, again, an influx of FDCPA plaintiffs that are not truly injured. And I think this court has done a really great job of trying to halt that. And reversing this would change that for sure. So I know that I'm out of time here. So I would say that appellees respectfully request that the dismissal below be affirmed. Thank you. Thanks so much. I'm going to get Mr. Phillips up here for two minutes. So now, oddly, I'm here to argue for the collection industry and the rest of the creditors. The squeaky wheel shouldn't be the one that gets the grease. Okay? Most consumers owe more than one debt. So the fact that you paid a debt you owed, well, why do we want to incentivize the squeaky wheel to get money ahead of the other Ahead of their landlord. Or ahead of their CTA pass. Or ahead of some other debt that they owe. Maybe a medical bill. That's not right. That doesn't make any sense. Paying a debt is not the only way to be injured under the Fair Debt Act. This court's already recognized that. I think there's a lot of loose language in some of the standing cases because a lot of those cases were bad cases to be brought. Persinger, choosing upon seclusion. Okay? They don't have to break down the person's door. They look at the credit report when they shouldn't have after the fresh start in bankruptcy. Okay? Ewing Med 1 and Webster RPM, which are two cases together. Negative credit report. Because they omitted noting that the debt was disputed. Still, they haven't paid anything to the debt collector. Okay? Choosing upon seclusion, they didn't pay anything to the debt collector. Debt collector beats up my client. Which this debt collector isn't. I'm not saying this debt collector, but a debt collector beats up my client. They don't pay anything. They're still damaged. This idea that the only way to be damaged is to pay money to the debt collector is just flat wrong. And to say that she was benefited by acting in her own interest. No, it wasn't in her own interest to have to go to the post office again and dispute the debt again. She did exactly what the debt collector demanded she do if she wanted to preserve her rights. They were wrong and they shouldn't have done that. They didn't need to send that letter out saying we're looking into it. They could have front line. The original debt collector working with LVNV send it out and say we got it. We're not demanding payment. We're just letting you know we're looking into it. Resurgent, which isn't really a separate debt collector. Resurgent and LVNV are basically one and the same. LVNV owns the debt. Resurgent works the debts for them. They're the master servicer. But they're one and the same. LVNV has no employees. They're all resurgent. They're all the same address in Greenville, South Carolina. So there was no benefit to the consumer here. They harmed her. We proved the harm. Judge Ellis didn't criticize us for bringing this forward in response to the opposition. She just said that's not damage. And she came up with the defendant's theory of, oh, this is a benefit to be able to dispute it again. It's not a benefit. We ask that you reverse and remand. Thank you very much. Thank you both very much. Thank you both. Cases taken under advisement.